1:05-cv-01252-MMM-BGC   # 163   Page 1 of 13   E-FILED
1:05-cv-01252-MMM -BGC   # 162-1   Page 1 of 9
Friday, 18 February, 2011   11:05:26 AM
Clerk, U.S. District Court, ILCD
Wednesday, 16 February, 2011   06:12:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA   DIVISION

| | |
|---|---|
| BONNIE J. MASON, INDIVIDUALLY AND AS CO-ADMINISTRATOR OF THE ESTATE OF TRICIA M. MASON, DECEASED, AND WILLIAM L. MASON, INDIVIDUALLY AND AS CO-ADMINISTRATOR OF THE ESTATE OF TRICIA M. MASON, DECEASED,<br><br>*Plaintiffs*,<br><br>v.<br><br>SMITHKLINE BEECHAM CORP., D/B/A/ GLAXOSMITHKLINE, A PENNSYLVANIA CORPORATION,<br><br>*Defendant*. | Case No: 05-1252 |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REPLACE FDA WARNINGS EXPERT DR. ARVIN SHROFF**

Ronald L.M. Goldman
BAUM, HEDLUND, ARISTEI & GOLDMAN
12100 Wilshire Blvd, Suite 950
Los Angeles, ca 90025
Tel: (310) 207-3233    Fax: (310) 820-7444

Christopher L. Coffin
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765-0071
Tel: (225) 687-6396    Fax: (225) 687-6398
Email: ccoffin@pbclawfirm.com

Steven A. Wakeman
Philip M. O'Donnell
KINGERY, DURREE, WAKEMAN & RYAN, ASSOC.

416 Main Street
Commerce Bank Building, Suite 915
Peoria, Illinois 61602-1170
Tel: (309) 676-3612    Fax: (309) 676-1329

Donald J. Farber
LAW OFFICES OF DONALD J. FARBER
175 North Redwood Drive, Suite 130
San Rafael, California 94903
Tel: (415) 475-7181    Fax: (415) 472-7182

The substitution of Dr. Shroff is necessary because Dr. Shroff has a debilitating illness which has required his retirement. Good cause clearly exists to replace him. Furthermore, GSK will not be prejudiced by Plaintiffs' proposed substitution. The report Plaintiffs submitted of Dr. Kapit in this case is almost identical to reports Dr. Kapit has submitted in numerous other cases beginning in 2007.[1] GSK's conspiracy theories aside, Plaintiffs submitted an almost identical report in this case in order to avoid prejudice to GSK, not to "upgrade," "bolster," "re-invent the wheel" or to "circumvent" prior court orders. GSK has seen this report many times before, has deposed Dr. Kapit on this report and, on several occasions, has attempted to obtain court orders excluding him on this very report. In fact, GSK will have an opportunity to file another motion to exclude his testimony when motions in limine are filed in this case.

GSK first suggests that the discovery deposition *GSK* took of Dr. Shroff in 2007 should suffice as Dr. Shroff's trial testimony and misleadingly suggests that Plaintiffs' counsel

---

1    Dr. Kapit submitted reports concerning GSK's failure to warn of Paxil's suicide risks in the following cases:

| | |
|---|---|
| August 10, 2007 | *Collins v. SmithKline Beecham* |
| August 10, 2007 | *Turek v. SmithKline Beecham* |
| December 9, 2007 | *Knipe v. SmithKline Beecham* |
| April 9, 2008 | *Forst v. SmithKline Beecham* |
| February 19, 2009 | *Thompson v. SmithKline Beecham* |
| February 28, 2009 | *Kohler v. SmithKline Beecham* |
| April 17, 2009 | *Hanson v. SmithKline Beecham* |

"questioned Dr. Shroff at length and extensively explored his opinions in a videotaped deposition." GSK Response, p. 2. GSK knows this is not true. As Plaintiffs pointed out in their motion, out of the 360 page deposition, Plaintiffs' counsel questioned Dr. Shroff for approximately 26 pages of his testimony primarily to clarify his direct testimony concerning GSK's manipulation of clinical trial data related to patients who attempted or committed suicide on Paxil compared to placebo. *See* Exh. B to Plaintiffs' Motion to Replace Dr. Arvin Shroff, pp. 326-353. There was never any statement or intent expressed during the deposition to preserve Dr. Shroff's testimony for trial. See Plaintiffs' Motion, p. 3, fn. 2. Clearly, Plaintiffs' counsel did not question Dr. Shroff with any expectation that his deposition testimony would be used as evidence to prove their case at trial. It is plainly insufficient for Plaintiffs' purposes and GSK's examination of Dr. Shroff in its effort to invalidate his opinion certainly does not represent how Plaintiffs would present their case at trial.

GSK next suggests that Dr. Shroff should be pulled out of his retirement despite the state of his health for a "trial preservation" deposition. GSK fails to consider Dr. Shroff's physical and mental state nor the fact that this would require Dr. Shroff to engage in considerable preparation on a case in which he wrote a report over four years ago, not just to sit for another deposition. This would unnecessarily and unfairly place an extreme burden on an ill man.[2]

GSK then argues that, if Dr. Kapit is permitted to testify, he should only be permitted to testify in "strict conformity" to Dr. Shroff.[3] While it is reasonable to prohibit testimony that

---

2   While Plaintiffs believe the submission of a sworn declaration from an officer of the court should be sufficient without having to invade Dr. Shroff's medical privacy, Plaintiffs' counsel has obtained a declaration from him providing more detail concerning his illness and subsequent retirement. See Declaration of Dr. Arvin Shroff attached hereto as Exhibit A.

3   GSK cites *Dunkin Donuts Inc. v. N.A.S.T., Inc.*, No. 02 C 1272, 2005 U.S. Dist. Lexis 16703 for its "strict conformity" argument. In *Dunkin Donuts*, the plaintiff provided an

"drastically changes" a prior expert's opinions or that consists of entirely new or different conclusions, or tries to interject new theories, a substitute expert "is not normally required to simply adopt the prior expert's conclusions verbatim-in effect, doing little more than authenticating and confirming the prior expert's conclusions. Rather, the substitute expert 'should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform.'" *Lincoln National Life Insurance v. Transamerica Financial Life Insurance*, 2010 WL 3892860, *3 (N.D. Ind., Sept. 30, 2010). A substitute expert should be permitted "to conduct his own investigation and reach his own conclusions, as long as he addresse[s] the same subject matter as [prior expert's] report without meaningful changes." *Id.* at *4. [4] See also *Morel v.*

---

"extraordinarily powerful showing" of "major differences" between the exiting economic expert's report and the new economic expert's proposed opinions, despite an agreement prior to submission of the new report that it not deviate from the previous expert's opinions. *Dunkin Donuts* at *3. In *Dunkin Donuts*, the court found the *new* expert's report "seriously flawed in terms of noncompliance with the detailed requirements of Rule 26(a)(B)" and the new expert's report "failed to address many of the matters carefully spelled out by Dunkin's original submission ..." *Id.*, p. *3. In conclusion, the court would not exclude the new expert's testimony because that would be an "unacceptable penalty" under the circumstances, but instead ruled that the new expert would be permitted to "provide testimony that conforms precisely to [the prior expert's] Report (but not beyond, or in contravention of, that report)." *Id.*, p. *7.

[4]  On page 7 of its opposition, GSK lists a number of items in Dr. Kapit's report which it alleges "goes far beyond" Dr. Shroff's report. It appears that GSK is most concerned with the statistical analyses of Dr. Roger Grimson. Although Dr. Shroff testified about Dr. Grimson's analysis finding a statistically significant nearly eight-times greater risk of suicidal behavior in patients taking Paxil over those taking placebo in GSK's pre-approval clinical trials (see GSK Opposition Exh. 1, Shroff depo, p. 351:18-352:22), to the extent Dr. Kapit cites analyses conducted by Dr. Grimson, Plaintiffs are willing to stipulate that they will not question Dr. Kapit concerning Dr. Grimson's opinions or his analyses at trial. GSK also takes issue with Dr. Kapit's ability to "interpret and apply statistical analyses" where Dr. Shroff supposedly could not. The testimony GSK cites of Dr. Shroff was simply concerning whether particular numbers were "statistically significant," to which Dr. Shroff testified: "I don't know about the statistics, but the numbers here with a .5 percent versus .2 percent is significant." GSK Exh. 1, p. 132:1-10. While neither Dr. Shroff nor Dr. Kapit are statisticians by profession, both were/are capable of applying basic mathematical principles to the data in this case. GSK also complains that, unlike Dr. Shroff,

*Daimler-Chrysler*, 259 F.R.D. 17, 22 (D.P.R. 2009) (new expert *not required* to adopt the report and testimony of the prior expert in full and replacement expert "should have the opportunity to express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform"). Thus, GSK's argument that Dr. Kapit's testimony must "conform[] precisely" to Dr. Shroff's (GSK Motion, p. 6) is not the standard.[5]

GSK also vaguely argues that the Court should "hold[] Dr. Kapit to Dr. Shroff's concessions during his deposition." First, GSK fails to identify any specific concessions to which

---

Dr. Kapit "[o]pines that deposition testimony from individuals once employed by FDA and GSK support [] his theories and opinions," GSK Response, p. 8. However, Dr. Shroff *did* testify about this. Specifically, he testified that the impropriety of GSK's improper inclusion of certain suicide events in the placebo arm of its clinical trials was supported by "both the [FDA] reviewer -- and later on, Dr. Temple [of the FDA] also indicated that placebo run-in should not be counted. And in fact, if I remember correct, one of the GSK documents also says that." GSK Exhibit 1, Shroff depo, p. 125. Thus, there is no diversion of opinion between the experts on this point. GSK also suggests that Dr. Kapit's opinions inappropriately extend beyond Dr. Shroff's concerning documents obtained and analyzed *after* Dr. Shroff submitted his report and concerning events that occurred *after* Dr. Shroff's 2006 report, thus, he could not possibly have included them in his report. See e.g., GSK Motion, p. 8, last bullet point (concerning GSK's submissions to the FDA and resulting correspondence *in 2007*). Extensive discovery and litigation took place in various Paxil suicide cases across the country following the submission of Dr. Shroff's report in 2006 and, in addition, significant events shedding further light on Paxil's risks took place in late 2006 and thereafter. Thus, Dr. Kapit was able to incorporate documents, depositions and relevant events and activities that occurred in late 2006 and afterward where Dr. Shroff could not. Had Plaintiffs not been notified about Dr. Shroff's illness and retirement, they would likely have supplemented their expert disclosures to include these post-2006 documents and events.

5    GSK also cites *Doctor's Associates v. QIP Holder LLC*, No. 3:06-cv-1710 (VLB), 2009 WL 5184404 at *3 (D. Conn., Dec. 23, 2009) to argue that a substitute expert's opinion should be limited to the conclusions reached by the prior expert. *Doctor's Associates* concerned a new economic expert who utilized a damages analysis very different than the prior expert, which resulted in an additional $1.7 million in damages. *Id.*, at *3. While *Doctor's Associates* represents a good example of when an expert's different *conclusions* result in prejudice to the opposing party, Dr. Kapit and Dr. Shroff's ultimate opinions simply do not differ (both conclude, based on a review of mostly the same material, that GSK had a duty to warn of Paxil's known suicide risks, GSK had knowledge of the risk, failed to warn of the risk and hid the risk). They are not "contrary to or inconsistent with" each other. *Id.*, *5.

5

Dr. Kapit should be held. GSK Motion, p. 9. In support of this proposition, GSK takes a sentence out of *Morel v. Daimler-Chrysler*, 259 F.R.D. 17, 22 (D.P.R. 2009) out of context, which states "the introduction of a substitute expert does not *ipso facto* permit [the party requesting the substitution] to escape from the concessions or admissions of [the previous expert]." GSK Motion, p. 9, fn 2. However, *Morel* did not *require* the new expert to *accept* the concessions of the prior expert like an automaton, but allowed the party opposing the substitute expert to challenge the new expert's testimony with the former expert's report and prior testimony. In fact, the *Morel* court found the argument that the new expert must adopt the report and testimony of the prior expert in full unsupported by relevant authority. *Id.*, *22.

Unlike the cases GSK cites in its opposition, Dr. Kapit's opinions in this case and the material he reviewed are all very well known to GSK and have been for more than four years. This is not a case of a plaintiff losing an expert and soliciting a brand new and unknown expert who greatly expands or alters the previous expert's opinions to the prejudice of the opposing side. As the *Dunkin Donuts* court explained, Rule 26(a)(2)(B)'s disclosure requirements were designed to "pin each expert witness to a defined position *known to the adversary* in advance of trial" and to avoid "trial by surprise." *Id.*, at *3-4, emphasis added. Tellingly, in responding to Plaintiffs' motion to replace Dr. Shroff with Dr. Kapit, GSK did not even claim prejudice or harm, nor that it was "surprised" by Dr. Kapit's opinions or by any "new subject matter or a new theory of liability." GSK also did not argue that it will have insufficient time "to formulate a response and prepare cross examination." See *Morel* at *21. GSK has not made such arguments because it cannot truthfully do so.[6] Absent prejudice or harm, all GSK has are distinguishable cases in

---

6   To the extent GSK believes its current FDA warnings expert report is insufficient to counter Dr. Kapit's, Plaintiffs have no objection to GSK substituting it with one of the already existing reports countering Dr. Kapit's opinion in any one of the seven other cases in which Dr.

which courts have limited replacement experts' testimony based on the distinct facts of those cases.

Lastly, GSK suggests that Plaintiffs should be *sanctioned* for seeking to replace an expert who, by no fault of their own, can no longer testify due to illness. Such a proposition is insulting and outrageous. There is zero evidence in this case that Plaintiffs "purposefully" chose an expert "with limited knowledge, withdrew the expert, and substituted a new expert after the original expert's credibility was called into question at deposition." See GSK Motion, p. 9, citing *Gucci Am., Inc. v. Exclusive Imports, Int'l.*, 99 Civ. 11490, 2001 U.S. Dist. LEXIS 67 at *11-13 (S.D.N.Y. Jan. 9, 2001).

## CONCLUSION

Good cause clearly exists to replace Dr. Shroff given the current state of his health and forced retirement. Dr. Kapit is the most logical and least prejudicial substitute. Plaintiffs respectfully ask the Court to grant their motion to replace Dr. Shroff with Dr. Kapit and to allow use of Dr. Kapit's current report, which is almost identical to reports he has submitted in Paxil suicide cases for more than four years. Plaintiffs agree to refrain from asking Dr. Kapit about Dr. Grimson, his opinions or statistical analyses and is amenable to GSK replacing its current FDA warnings expert with one used in any one of the earlier cases to counter Dr. Kapit's opinions.

Respectfully submitted,

Dated: February 16, 2011    /s/ Ronald L.M. Goldman
Ronald L.M. Goldman
BAUM, HEDLUND, ARISTEI & GOLDMAN
12100 Wilshire Blvd, Suite 950
Los Angeles, ca 90025
Tel: (310) 207-3233    Fax: (310) 820-7444

---

Kapit has previously submitted a report.

Christopher L. Coffin
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765-0071
Tel: (225) 687-6396     Fax: (225) 687-6398
Email: ccoffin@pbclawfirm.com

Steven A. Wakeman
Philip M. O'Donnell
KINGERY, DURREE, WAKEMAN & RYAN, ASSOC.
416 Main Street
Commerce Bank Building, Suite 915
Peoria, Illinois 61602-1170
Tel: (309) 676-3612     Fax: (309) 676-1329

Donald J. Farber
LAW OFFICES OF DONALD J. FARBER
175 North Redwood Drive, Suite 130
San Rafael, California 94903
Tel: (415) 475-7181   Fax: (415) 472-7182

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2011, a true and correct copy of the foregoing **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REPLACE FDA WARNINGS EXPERT, DR. ARVIN SHROFF** was filed electronically with the Clerk of the Court using the CM/ECF system and served upon the following attorneys of record via said system:

Andrew T. Bayman
Mark S. Brown
S. Samuel Griffin
David F. Norden
KING & SPALDING
1180 Peachtree Street
Atlanta, GA   30309-3521

Robert V. Dewey
Joseph G. Feehan
Robert M. Bennett
HEYL, ROYSTER, VOELKER & ALLEN
Bank One Building
124 S. W. Adams Street
Peoria, IL 61602

Robert E. Glanville
Peter D. Braun
PHILLIPS LYTLE LLP
3400 HSBC Center
Buffalo, NY   14203-2887

/s/ Ronald L.M. Goldman
Ronald L.M. Goldman

E-FILED
Wednesday, 16 February, 2011  06:12:01 PM
Clerk, U.S. District Court, ILCD

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

BONNIE J. MASON, INDIVIDUALLY AND AS )
CO-ADMINISTRATOR OF THE ESTATE OF )
TRICIA M. MASON, DECEASED, AND )
WILLIAM L. MASON, INDIVIDUALLY AND )
AS CO-ADMINISTRATOR OF THE ESTATE )
OF TRICIA M. MASON, DECEASED, )
                )
                ) Case No: 05-1252
    *Plaintiffs*,        )
                )
v.               )
                )
SMITHKLINE BEECHAM CORP., D/B/A/ )
GLAXOSMITHKLINE, A PENNSYLVANIA )
CORPORATION, )
                )
    *Defendant*.       )
                )

---

**DECLARATION OF ARVIN SHROFF, Ph.D., IN SUPPORT OF
PLAINTIFFS' MOTION TO REPLACE FDA WARNINGS EXPERT,
DR. ARVIN SHROFF**

---

Ronald L.M. Goldman
BAUM, HEDLUND, ARISTEI & GOLDMAN
12100 Wilshire Blvd, Suite 950
Los Angeles, ca 90025
Tel: (310) 207-3233 Fax: (310) 820-7444

Christopher L. Coffin
PENDLEY, BAUDIN & COFFIN, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765-0071
Tel: (225) 687-6396 Fax: (225) 687-6398
Email: ccoffin@pbclawfirm.com

1

Steven A. Wakeman
Philip M. O'Donnell
KINGERY, DURREE, WAKEMAN & RYAN, ASSOC.
416 Main Street
Commerce Bank Building, Suite 915
Peoria, Illinois 61602-1170
Tel: (309) 676-3612   Fax: (309) 676-1329

Donald J. Farber
LAW OFFICES OF DONALD J. FARBER
175 North Redwood Drive, Suite 130
San Rafael, California 94903
Tel: (415) 475-7181   Fax: (415) 472-7182

## **DECLARATION OF ARVIN SHROFF, Ph.D.**

I, Arvin Shroff, Ph.D, state and declare the following:

1. I submitted a report in this case over four years ago, in September 2006.

2. I am now 77 years old.

3. In October 2010, I notified Plaintiff's counsel that I was in the process of retiring as a result of a debilitating illness. I am as of now fully retired.

4. I have trigeminal neuralgia, which is a nerve disorder that causes very painful, sharp, stabbing, electric-shock-like spasms in my face, which I experience frequently.

5. This is a condition that has gotten progressively worse over time to the point that my treatments no longer work. I am seeking surgical options at this time to correct my situation. I cannot effectively function and had to retire.

6. I currently take an anti-epileptic medication called Tegretol to treat my trigeminal neuralgia which affects my memory, retention and overall thought processes.

7. I also take hydrocodone with acetoaminophen for pain.

2

8.  If I were required to appear for trial or sit for a deposition, I would have to undergo considerable preparation given that it has been over four years since I reviewed the approximate six boxes of material for this case. This would place a serious burden on me and my health.

9.  Furthermore, because I am in constant pain and suffer from memory problems resulting from my medication, I am unable to fulfill my duties as an expert for the Plaintiff(s) in this case either for a deposition or trial.

10. In addition to the above, I recently underwent a complete left knee replacement operation, which resulted in complications, and my recovery is not going as well as expected. My surgeon advised me that it may take as long as a year for full recovery at my age.

I declare under penalty of perjury under the laws of the United States of America and the State of Illinois that the foregoing is true and correct.

Signed this 9th day of February, 2011, at New Market, Maryland.

_____
Arvin Shroff, Ph.D.